**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**


**DENISE WADE**                                                                           **PLAINTIFF**


**v.**                                        **No. 4:13-cv-48-DPM**


**BAPTIST HEALTH; DEBRA LANGLEY;
and NAOMI WALLIS**                                                                 **DEFENDANTS**


**ORDER**

**1.**  Denise Wade is a nurse.  She's sued her former employer, Baptist Health, and her former supervisors there, Debra Langley and Naomi Wallis, alleging violations of the Family Medical Leave Act, and the Employee Retirement Income Security Program, as well as wrongful termination.  The hospital defendants seek summary judgment.

**2.**  Most all the facts are agreed.  *№ 22; № 23; № 25*.  Exactly why Baptist fired Wade in December 2012, though, is much disputed.  Here's what happened, taking the record in the light most favorable to Wade.

In the year before she lost her job, Wade had gotten two written warnings for excessive absences under the hospital's progressive discipline policy.  *№ 22 at* ¶¶ 2, 3.  A third written warning—for any reason—equals termination. *№ 22 at* ¶ 5.  In September 2012, three months before Wade was fired, she hurt her back while lifting a patient.  *№ 22 at* ¶ 6.  Though she returned to work with restrictions, Wade was being treated for these injuries. *№ 19 at 1–2.*  Baptist coordinated her doctor visits because Wade was pursuing a workers' compensation claim.  *№ 19 at 2; № 25 at* ¶ 6.  In October 2012, Wade took about two weeks of approved FMLA leave to care for her son after a surgery. *№ 14-6; № 14-7.* She worked off and on in late November and early December.  A timeline is the best way to show the events thereafter, which culminated in Wade's firing.

| | |
|---|---|
| 3 December 2012 | Reminder email to Wade: get flu shot by 15 December 2012. *№ 14-11.* |
| 10 December 2012 | Baptist filled out leave-of-absence forms on Wade's behalf. *№ 14-4 at 43–44.* |
| 12 December 2012 | Wade had missed work for three consecutive days. *№ 14 at 3; № 19 at 3.* |
| 14 December 2012 | Baptist drafted a letter on Wade's behalf, preliminarily approving intermittent FMLA |

|  | leave effective 25 October 2012 until a date unknown. *№ 14-9; № 22 at ¶ 9.* |
|---|---|
| 15 December 2012 | Flu shot deadline. *№ 14-4 at 27; № 19-3 at 11–12.* |
| 18 December 2012 | Baptist filled out preliminary FMLA Designation on Wade's behalf effective 9 December 2012 to date unknown. *№ 14-8; № 22 at ¶ 9.* |
| 19 December 2012 | Wade scheduled to work, but didn't show up. *№ 22 at ¶ 10.* Wade appointment with Doctor Nallu made by Baptist. *№ 14-4 at 30.* Wade got flu shot. *№ 22 at ¶ 13.* |
| 20 December 2012 | Wade signed form granting FMLA leave effective 9 December 2012. *№ 14-8.* Naomi Wallis issued Wade written warning for not calling in or reporting to work on 19 December 2012. *№ 22 at ¶ 11; № 14-4 at 26.* Wallis also issued Wade written warning for not getting flu shot by 15 December 2012. *№ 22 at ¶ 14.* Wallis and Langley fired Wade. *№ 1 at ¶ 24.* |

**3.** To make a *prima facie* case of FMLA discrimination, Wade must show a protected activity, an adverse employment action, and a causal connection between the two. *Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1007 (8th Cir. 2012). Wade says she exercised her rights under the FMLA in December 2012. *№ 19 at 6.* Baptist knew Wade had injured her back on the

job in September, was being treated for the injury, and was missing work. *№ 22 at ¶ 6; № 19-4 at 19.* When Wade was out more than three consecutive days in early December, Baptist began the FMLA leave application process on her behalf. *№ 22 at ¶ 9; № 14-4 at 36–44.* Wade had "provid[ed] enough information to put [Baptist] on notice that [she] may be in need of FMLA leave." *Phillips v. Mathews,* 547 F.3d 905, 909 (8th Cir. 2008); *№ 19-4 at 19.* And she was fired contemporaneously for having gotten her flu shot late and having missed work without calling in. *№ 1 at ¶ 24; № 22 at ¶¶ 11, 14, 16.*

This case comes down to whether Wade's third and fourth warnings were in retaliation for her need for more FMLA leave. Wade argues these warnings should never have been issued after she'd been preliminarily approved for leave. *№ 19 at 2–3; № 25 at ¶ 10.* She says Defendants issued them to get rid of her and avoid giving her back pay. *№ 14-4 at 16; № 19 at 8.* Pointing to some emails about her workers' compensation claim, she argues Baptist didn't like that she had been missing work for her back injury and had previously missed work for a knee injury. *№ 14-4 at 16; № 19-4 at 19–20.*

Defendants contend Baptist had legitimate non-discriminatory reasons for issuing the third and fourth written warnings. *№ 14 at 13–14.* Wade failed to get a flu shot by the December 15th deadline; and it was Baptist policy for every employee who missed the deadline to receive a written warning. *№ 14 at 13–14.* Wade was scheduled to work on December 19th and failed to call in. It was her responsibility, the hospital defendants say, to inform her shift supervisor about an absence, even though Baptist had preliminarily approved her for FMLA leave a few days before. *№ 14 at 13; № 24 at 3–4.*

In response, Wade says there was no official flu shot deadline; she got the shot in time but Baptist lost her record; and, alternatively, she didn't need to get the shot because she was on FMLA leave. *№ 19 at 2–3; № 25 at ¶ 12.* She also argues Baptist was aware of her doctor's appointment on December 19th because the hospital had scheduled it. *№ 19 at 2; № 14-4 at 8-9.* She says it was the health nurse's responsibility to notify the shift supervisor about Wade's absence, which shouldn't count anyway because the hospital had already put Wade on FMLA leave. *№ 19 at 2; № 14-4 at 8-9; № 25 at ¶ 10.*

Whether considered at the *prima facie* stage or as a matter of pretext, questions of material fact exist about the reasons for Wade's third and fourth

written warnings. A reasonable juror could conclude that Baptist fired Wade

for exercising her rights under the FMLA, not because she didn't show up or

didn't get a flu shot. A jury needs to answer whether the retroactive FMLA

leave Baptist preliminarily approved for Wade was in effect before her firing,

whether Wade was responsible for notifying her supervisor about her absence

and for getting a flu shot even if on leave, and whether Wade's December

absences counted under Baptist policy if Wade was on leave. Based on the

depositions and records, reasonable people could disagree on the answers.

*Brown v. City of Jacksonville*, 711 F.3d 883, 891–92 (8th Cir. 2013).

**4.** There is a vexed damages question on the FMLA claim. Wade's

application for Social Security disability is apparently still pending. *№ 14-4

at 4.* Wade is contending there that she's been totally disabled since her

September 2012 back injury. *№ 22 at* ¶ 17. She hasn't worked at all since

Baptist fired her. *№ 14-4 at 4.* Wade has abandoned any claim for back pay

or reinstatement in this case. *№ 19 at 8.* She seeks only some equitable award

of front pay. *Ibid.* The Court is puzzled about this. Wade, based on her

workers' compensation claim, is unable to work at all. Is front pay available?

The hospital defendants' motion is denied without prejudice on potential

damages.   But Wade must file a brief, with case citations and statutory analysis, on this point by 20 June 2014.   The hospital defendants should respond by 3 July 2014.   Then the Court will reconsider — no formal renewal of the motion for summary judgment is required.

**5.** The Court agrees with the hospital defendants that Wade's ERISA claim rises or falls with her FMLA claim.

**6.** Wade's wrongful-termination claim needs more briefing too.   Does it violate *state* public policy if Baptist violated the FMLA?   Defendants' argument seems to assume so.   Wade pleads this claim only as a matter of the FMLA.   (Her briefing mentions retaliation for her workers' compensation claim, but  this is no longer an adequate state-law ground to avoid the employee-at-will doctrine.   *General Electric Co. v. Gilbert*, 76 Ark. App. 375, 381, 65 S.W.3d 892, 897 (2002); ARK. CODE ANN. § 11-9-107(a)(d) & (e)).   The parties should also cover the federal/state policy issue in their supplemental briefs.

**7.** The Court cannot keep the July trial date because of trial in an older case.   The Scheduling Order is suspended; an Amended Order will issue. Supplemental brief due from Wade by 20 June 2014 and from the hospital

defendants by 3 July 2014.  Motion for summary judgment, *№ 12,* denied, but without prejudice on FMLA damages and the wrongful-termination claim.

So Ordered.

_D.P. Marshall Jr._____

D.P. Marshall Jr.
United States District Judge

   10 June 2014_____